**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

SELECTIVE INSURANCE COMPANY OF THE
SOUTHEAST,

                Plaintiff,

    -against-

ELMWOOD PARK SCHOOL DISTRICT #401,

                Defendant.

CASE NO.:

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff, SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST ("Selective"), by and through its attorneys, Litchfield Cavo LLP and Coughlin Midlige & Garland LLP, and for its Complaint against defendant, ELMWOOD PARK SCHOOL DISTRICT #401 ("Elmwood"), states as follows:

**NATURE OF THE ACTION**

1.      This is an action seeking a declaratory judgment and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      Defendant Elmwood has been named as a defendant in an underlying personal injury action captioned *Jane Doe v. Elmwood Park Community Unit School District 401, et al.*, venued in the Circuit Court of Cook County, Illinois County Department, Case No. 2021 L 006363 (the "Underlying Action"). In the Underlying Action, Jane Doe ("Claimant"), has asserted claims of negligent supervision, negligent retention and willful and wanton negligence against Elmwood arising out of the alleged grooming and sexual assault of Claimant by Dallas Till ("Till") – a teacher and coach employed by Elmwood.

3198042

3.      As relevant to this lawsuit, Plaintiff Selective issued six (6) consecutive liability insurance policies (collectively, the "Selective Policies") to Educational School Insurance Cooperative ("ESIC") under which Elmwood is listed as a Named Insured. Selective has agreed to defend Elmwood in the Underlying Action under the latter three of those policies, subject to a reservation of all of Selective's rights.

4.      In this action, Selective seeks a declaration that the claims asserted by Claimant against Elmwood in the Underlying Action are not covered under the following three (3) policies issued by Selective because the Underlying Action does not seek damages for "personal injury" or "bodily injury" that allegedly occurred during the applicable policy periods: (i) Policy No. 1323596, effective November 1, 2003 to November 1, 2004 (the "'03-'04 Policy"); (ii) Policy No. 1323596, effective November 1, 2004 to November 1, 2005 (the "'04-'05 Policy"); and (iii) Policy No. 1323596, effective November 1, 2005 to November 1, 2006 (the "'05-'06 Policy").

5.      Selective also seeks a declaration that to the extent its final three policies, No. S 1323596, effective November 1, 2007 to November 1, 2008 (the "'06-'07 Policy), No. S 1323596, effective November 1, 2007 to November 1, 2008 (the "'07-'08 Policy") and No. S 1323596, effective November 1, 2008 to November 1, 2009 (the "'08-'09 Policy"), are determined to afford coverage in connection with the Underlying Action, each such Policy affords a maximum of $1 million in coverage for all monetary amounts Elmwood pays or is obligated to pay in connection with its defense and resolution, whether by judgment, settlement or otherwise, of the Underlying Action.

6.      Finally, Selective seeks a declaration that it has no duty to indemnify, or to continue providing a defense to, Elmwood in the Underlying Action under the '08-'09 Policy because there

2

is no cognizable potential for Elmwood to be held liable in the Underlying Action for any abuse perpetrated by Till against Claimant during the effective period of that policy.

## PARTIES

7.  Plaintiff Selective is an Indiana corporation with its principal place of business located at 40 Wantage Avenue, Branchville, New Jersey 07890. Selective is authorized to transact business and has transacted business in Illinois.

8.  Defendant Elmwood is an Illinois Public School District that operates K-12 schools including Elmwood Park High School ("EPHS"). EPHS is located in the Village of River Grove, Cook County, Illinois. Upon information and belief, Elmwood's principal place of business is located at 8201 West Fullerton Avenue, Elmwood Park, Illinois 60707.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201-02 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive interests and costs; and (iii) the matter is between citizens of different states.

10.  Venue is proper under 28 U.S.C. § 1391 because Elmwood is a resident of this judicial district and a substantial part of the events giving rise to the claim occurred in this district.

## THE UNDERLYING ACTION

11.  On or about October 16, 2023, Claimant filed a Second Amended Complaint against the following defendants in the Underlying Action: (i) Elmwood; (ii) Till; (iii) J. Sterling Morton High School District 201 ("JSM"); and (iv) Elmhurst University. A copy of the Second Amended Complaint in the Underlying Action is attached hereto as **Exhibit A**.

12.     The Second Amended Complaint in the Underlying Action alleges that Claimant entered EPHS as a freshman in the Fall of 2004. Claimant alleges that she was experiencing difficulties at home during this period due to a deterioration in her parents' relationship.

13.     Claimant alleges that she participated in girls' basketball and softball at EPHS and that the girls' basketball team was coached by Till and the girls' softball team was coached by Till's ex-wife, Erica ("Coach Erica"). Claimant alleges that, in or about October 2004, at the beginning of training for the upcoming basketball season, Till "targeted Doe, taking a special interest in her, meeting with her in the mornings before school for individual training sessions in order to develop a close and inappropriate personal relationship with her."

14.     It was at this time that Claimant alleges that Till began grooming Claimant "for the years of sexual abuse he inflicted on her leading to significant emotional and personal issues that plague her to this day."

15.     During the Summer of 2005, for example, Claimant alleges that Till began sending her text messages and telling Claimant that he "loved" her. Till also allegedly volunteered to drive Claimant home from workouts and late-night practices during the course of EPHS's girls' basketball summer camp. During these car rides, Till allegedly confided personal information to Claimant about his marriage, including complaining about his wife and suggesting that Till and Claimant's relationship was impacting the marriage.

16.     In the Fall of 2005, Claimant allegedly tried to run away from home whereafter Till invited Claimant to stay at his home with him and his then-wife, Coach Erica. Claimant further alleges that Till's contact with Claimant continued to expand in scope and frequency, with Till inviting Claimant to spend time in his EPHS office to relax or do homework. Till and Claimant

were allegedly frequently sending email, text and instant messages to each other at this time as well.

17.     After the beginning of Claimant's junior year fall semester (i.e., Fall 2006), Till allegedly told Claimant that he and Coach Erica had separated and that she had moved out of their home. Till thereafter allegedly increased the nature and frequency of his contact with Claimant through numerous text messages and personal phone calls as well as taking Claimant to the movies on one occasion.

18.     The Second Amended Complaint in the Underlying Action alleges that, "[i]n or about April 2007, Till exploited the emotional connection he had established with the minor [Claimant] and seduced her into having sexual intercourse with him."

19.     Claimant further alleges that, during the Spring of 2007, "Till frequently had illegal sexual intercourse with [Claimant], and the two were around each other regularly in the school." The illicit sexual relationship between Till and Claimant allegedly increased over the Summer and Fall of 2007, "with Till sexually assaulting [Claimant] regularly in his Elmhurst, Illinois home, in the EPHS building, and his EPHS office."

20.     In the Fall of 2007, Claimant alleges that she reached the age of 18 and continued to engage in sexual relations with Till and routinely stayed at Till's house. It was at this time that a number of students and cheerleaders allegedly posted on a public Internet forum that Till was engaging in improper sexual activity with EPHS students. Claimant alleges, upon information and belief, that EPHS's principal – James Jennings – read the posts and, instead of meaningfully investigating the allegations, emailed the website directly and asked them to take down the post about Till.

21.     Claimant allegedly stopped attending classes at EPHS in or about February of 2008, upon Till's urging.

22.     Upon information and belief, Claimant graduated from EPHS in or about June 2008.

23.     The Second Amended Complaint alleges, however, that Claimant's relationship with Till continued through the Summer of 2008. In the Fall of 2008, Claimant alleges that she discovered she was pregnant with Till's child. Claimant alleges that Till convinced Claimant to abort the pregnancy, which she did.

24.     Claimant further alleges that, in or about the Spring of 2009, Till told Claimant that he met someone new. Till allegedly directed Claimant to move out of his home, "thus abandoning [Claimant]."

25.     The Second Amended Complaint contains the following causes of action against Elmwood: (i) Willful and Wanton Negligent Supervision of Till; (ii) Negligent Retention of Till (pled solely for the purposes of preserving this previously dismissed count for appeal); and (iii) Willful and Wanton Negligence.

26.     The "Willful and Wanton Negligent Supervision of Till" count against Elmwood alleges that the District willfully and wantonly breached its duties to supervise its employees by, among other things: (i) failing to properly evaluate Till prior to hiring and to learn about the additional supervision he required; (ii) failing to prevent Till from grooming and sexually assaulting Claimant; and (iii) allowing Till to groom and sexually assault Claimant despite the District's actual and/or constructive knowledge of Till's sexual assaults against Claimant.

27.     Claimant further alleges in her claim for "Willful and Wanton Negligent Supervision of Till" that she was injured as a direct and proximate result of the District's wanton

and willful negligence "in that she suffered from Till's manipulations, sexual assaults and the unconscionable results thereto including but not limited to great emotional distress, psychological injury, and loss of a normal life."

28. Claimant alleges substantially similar conduct and injuries as the basis for her claims of negligent retention and "willful and wanton negligence" against Elmwood.

## THE SELECTIVE POLICIES

29. As relevant to this action, Selective issued six (6) consecutive annual liability insurance policies to ESIC, under policy number S 1323596, with the first such policy incepting on November 1, 2003 and the final policy expiring on November 1, 2009. "Elmwood Park School District #401" is added as a Named Insured to the Selective Policies via policy endorsement.

30. Part III of the Selective Policies contains the following General Liability insuring agreement which states, in pertinent part:

> **SECTION K: General Liability**
>
> We will only be liable for the Ultimate Net Loss in excess of the self insured retention. We will not pay more than the excess limit of liability shown on the supplemental declaration page.
>
> We agree to pay those sums the Insured must legally pay, or the Named Insured has contracted to pay, for:
>
> 1. damages, direct or consequential; and
>
> 2. expenses.
>
> Only damages and expenses defined by Ultimate Net Loss are covered.
>
> These payments cover:
>
> 1. bodily injuries or personal injuries, suffered or alleged to have been suffered. These must be caused by an occurrence during the term of this insurance […]

*     *     *     *     *

7

Our liability here is subject to the exclusions, conditions and definitions in Part III, Part IV, Common Policy Provisions, or any added endorsements.

We must defend any suit against the Insured that seeks damages for personal injuries or property damage this insurance covers, even if the allegations are groundless, false or fraudulent. We may settle any claim or suit we consider expedient.

*     *     *     *     *

31.     The following definitions are applicable to Part III of the Selective Policies:

**PART III: DEFINITIONS**

**2. Bodily injury**. This means: bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time […]

**3. Personal injury**. This means injury other than 'bodily injury" arising out of:

*     *     *     *     *

b. mental anguish and humiliation

*     *     *     *     *

**6. Occurrence**. This means:

a. an accident;

b. a happening;

c. an event; or

d. continuous or repeated exposure to conditions.

These must unexpectedly or unintentionally lead to personal injury or property damage during the term of this insurance. All exposure to substantially the same general conditions of one location is one occurrence.

*     *     *     *     *

32.     The following condition is applicable to Part III of the Selective Policies

8

**An Insured's Duties If There Is An Occurrence, Claim or Suit**

An insured has certain duties if an occurrence, claim or suit is brought against an insured that:

1.  may result in a claim under this policy, or

2.  involves any of the following:

> \*    \*    \*    \*    \*

> e.  rape and/or serious physical assault; class action;

> \*    \*    \*    \*    \*

In these situations, regardless of perceived liability, an insured must notify us in writing and include:

a.  reasonable information about time, place and circumstances; and

b.  copies of demands, notices, summonses or other legal documents an Insured has received.

An insured must also:

a.  cooperate with our investigation, settlement or defense.

b.  help us, if we ask, to enforce any right against any one or any organization that may be liable to an Insured because of a covered injury or damage.

> \*    \*    \*    \*    \*

33.    The Selective Policies indicate that Section K – General Liability coverage is subject to certain designated each-occurrence and general aggregate limits in excess of the retained amount shown on the Schedule of Self Insured Retentions. For example, the each-occurrence and general aggregate limits applicable to the '06-'07, '07-'08 and '08-'09 Selective Policies are, respectively, $2 million and $4 million.

34.    The Selective Policies also contain an "Abuse or Molestation" endorsement which provides that, under Section K, General Liability, the General Aggregate Limit of liability

9

applicable to Abuse or Molestation coverage, only, is amended to $1,000,000. The "Abuse or

Molestation" endorsement further states, in pertinent part:

> It is further agreed that abuse or molestation coverage is defined as follows:
> 1. the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
> 2. the negligent
>    a. employment;
>    b. investigation;
>    c. supervision;
>    d. reporting to the proper authorities, or failure to so report; or
>    e. retention;
>    of a person for whom any Insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1. above.

35.     The '06-'07, '07-'08 and '08-'09 Policies' Schedule of Self Insured Retentions

states, in pertinent part, as follows:

**SCHEDULE OF SELF INSURED RETENTIONS**

> The SELF INSURED RETENTION amount, LOSS FUND AGGREGATE AMOUNT, and MAINTENANCE DEDUCTIBLE stated herein are as follows:
>
> **$ 100,000 Self Insured Retention** per occurrence or per loss from a covered cause of loss
>
> **$ 300,000 Loss Fund Policy Aggregate**
>
> **$ 1,000  Maintenance Deductible**
>
> In consideration of the reduced premium charged, the Company's obligation to pay for damages caused by a resulting [sic] from any occurrence or covered cause of loss is limited to the payment of that portion of the **Ultimate Net Loss** which, subject to the **Loss Fund Aggregate**, is in excess of the **Self Insured Retention** amount listed above.
>
> The **Self Insured Retention** or the Company's obligation under the applicable coverage parts shall be in excess of the **Maintenance Deductible** identified above.
>
> The Company's duty to investigate, settle and defend claims or suits under this policy applies only after the **Ultimate Net Loss** exceeds the **Self Insured Retention**, and the **Maintenance Deductible**, if applicable. The

Company shall have the right, but not the duty, to associate with you in the defense of any claim or suit for which the **Ultimate Net Loss** is likely to exceed the **Self Insured Retention**. The Company shall not be obligated to defend any claim or suit after the applicable limit of the Company's liability has been exhausted through payment of claims, settlements or judgements.

\* \* \* \* \*

**Self Insured Retentions (S.I.R.):** The amount of dollars retained by the Insured for each occurrence or loss from a covered cause of loss and charged to the loss fund.

**Ultimate Net Loss**:

A. all sums which the Insured is legally obligated to pay as damages including pre- and post-judgement interest, whether by reason of adjudication or settlement because of liability to which this insurance applies, and

B. all expenses incurred by the Insured (including any third party administrator) in the investigation, negotiation, settlement or defense of claims or suits seeking such damages, excluding only the salaries of the Insured's regular employees, provided, however, that **Ultimate Net Loss** shall not include any damages or expenses or liability excluded or not otherwise covered by this policy.

**Loss Fund Policy Aggregate:** The amount of loss dollars retained by the Insured, which is the maximum amount to be applied for all **Self Insured Retentions**. No losses in excess of the **Self Insured Retentions** are chargeable to the loss fund. In addition, the **Self Insured Retention** is limited to the aggregate as indicated for all occurrences, persons, organizations, accidents, employees or claims. This aggregate **Self Insured Retention** applies separately to each consecutive annual period and any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declaration.

\* \* \* \* \*

.

36. While the Loss Fund Policy Aggregate referenced in the Schedule of Self Insured Retentions for the '06-'07 Policy has been met, it has not been met for the '07-'08 or '08-'09 Policies.

37.     Since May 2022, Selective has been providing a defense to Elmwood in the Underlying Action, subject to a reservation of rights. Initially, it agreed to provide that defense under the '06-'07 Policy but has since advised that it will defend under that policy as well as the '07-'08 and '08-'09 Policies.

## COUNT ONE
**(Declaratory Judgment – No Coverage Under the '03-'04, '04-'05 or '05-'06 Policies)**

38.     Pursuant to the terms, conditions, definitions, limitations and/or exclusions of the Selective Policies, Selective seeks a declaration that it has no duty to defend or indemnify Elmwood in the Underlying Action under the '03-'04, '04-'05, and '05-'06 Policies.

39.     There exists an actual, ripe, and justiciable controversy between the parties concerning Selective's obligation, if any, to defend and/or indemnify Elmwood in the Underlying Action under the '03-'04, '04-'05, and '05-'06 Policies.

40.     Part III, Section K – General Liability of the '03-'04, '04-'05, and '05-'06 Policies provides coverage for "bodily injury" or "personal injury" only if such injury is caused by an "occurrence" during the term of the policy. The Policy likewise requires that an occurrence "must unexpectedly or unintentionally lead to personal injury or property damage ***during the term of this insurance*** (emphasis added)."

41.     In the Underlying Action, it is alleged that the first incident of sexual assault committed by Till against Claimant occurred in April of 2007. While the Underlying Action also describes certain alleged "grooming" behavior, in the form of individual attention paid and communications exchanged between Till and Claimant, it does not allege any contemporaneous injury resulting from that behavior.  Accordingly, the Underlying Action does not allege "bodily injury" or "personal injury" caused by an "occurrence" during the effective periods of any of the '03-'04, '04-'05, and/or '05-'06 Policies.

42.     Selective is entitled to a judgment declaring that it has no obligation to defend or indemnify Elmwood in the Underlying Action under the '03-'04, '04-'05, and '05-'06 Policies.

## COUNT TWO
### (Declaratory Judgment – Available Limits of Potential
### Coverage Under the '06-'07, '07-'08 and '08-'09 Policies)

43.     Selective seeks a declaration that the '06-'07, '07-'08 and '08-'09 Policies each afford a maximum of $1 million of available coverage, should such coverage apply, for all monetary amounts Elmwood pays or is obligated to pay in connection with its defense and any resolution, whether by judgment, settlement or otherwise, of the Underlying Action.

44.     As set forth in Count One above, there is no defense or indemnity coverage available to Elmwood for the Underlying Action under the '03-'04, '04-'05, and/or '05-'06 Policies because the Underlying Action does not allege "bodily injury" or "personal injury" caused by an "occurrence" during the effective period of any of those policies.

45.     The '06-'07, '07-'08 and '08-'09 Policies contain an "Abuse or Molestation" Endorsement which provides that under Section K – General Liability, the General Aggregate Limit of Liability applicable to Abuse or Molestation coverage is $1 million.

46.     Abuse or molestation coverage is defined, in part, in the '06-'07, '07-'08 and '08-'09 Policies as the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured.

47.     In the Second Amended Complaint, Claimant has alleged that she was sexually abused by Till – an employee of Elmwood – during the time when Claimant was a student at EPHS, a high school within the district of Elmwood.

48.     Claimant further alleges in the Underlying Action that Elmwood breached its duty owed to Claimant, as a student of EPHS, in various respects, including by failing to prevent Till from sexually assaulting her.

49.     Accordingly, the claims asserted by Claimant against Elmwood in the Underlying Action are premised upon conduct that falls within the scope of the Policies' Abuse or Molestation Endorsement and are thus subject to the $1 million general aggregate sub-limit provided for therein.

50.     Further, the insuring agreements contained within the '06-'07, '07-'08 and '08-'09 Policies provide that Selective will "only be liable for the Ultimate Net Loss in excess of the self insured retention."

51.     The '06-'07, '07-'08 and '08-'09 Policies define "Ultimate Net Loss" as: (a) all sums which the Insured is legally obligated to pay as damages, and (b) all expenses incurred by the Insured in the investigation, negotiation, settlement or defense of claims or suits seeking such damages.

52.     Based on the foregoing, the $1 million general aggregate sub-limit applicable to the '06-'07, '07-'08 and '08-'09 Policies is the maximum amount of coverage, if any, available for (1) damages Elmwood is legally obligated to pay, plus (2) expenses incurred by Elmwood in connection with the defense of the Underlying Action.

53.     Selective is therefore entitled to a judgment declaring that the maximum amount of available coverage, if any, under the Selective Policies for all monetary amounts Elmwood pays or is obligated to pay in connection with its defense and any resolution, whether by judgment, settlement or otherwise, of the Underlying Action, is $1 million for each of the '06-'07, '07-'08 and '08-'09 Policies, for a combined total of $3 million.

## COUNT THREE
### (Declaratory Judgment – No Duty to Indemnify Or
### Further Duty to Defend Under the '08-'09 Policy)

54.     Selective seeks a declaration that it has no duty to indemnify Elmwood in the Underlying Action under the '08-'09 Policy.

55.     The applicable insuring agreement of the '08-'09 Policy provides that Selective will "pay those sums the Insured <u>must legally pay</u> (emphasis added)" for damages and expenses to which the Policy's coverage applies.

56.     In the Second Amended Complaint, Claimant alleges that Elmwood owed her a duty, as a student of EPHS, "to protect her from grooming and other sexual abuse by the staff at EPHS." Claimant further alleges that Elmwood breached this duty by, among other things, "[f]ailing to ensure Doe's safety while on School District property."

57.     Claimant alleges that she turned 18 in the fall of 2007 and that she stopped attending classes at EPHS in or about February 2008.

58.     Plaintiff graduated from EPHS in or about June 2008.

59.     There is no cognizable legal theory upon which Elmwood can be found liable for negligence in the Underlying Action as a result of any abuse that Till committed against Claimant during the time period when the '08-'09 Policy was in effect (November 1, 2008 through November 1, 2009).

60.     The Underlying Action thus creates no potential for an award of damages against Elmwood based upon injury Claimant allegedly sustained during the effective period of the '08-'09 Policy.

61.     Selective is entitled to a declaration that it has no duty to indemnify Elmwood under the '08-'09 Policy because the Underlying Action does not create any potential that Elmwood will

be held legally required to pay any sums as a result of injury sustained by Claimant during the '08-'09 Policy period. Furthermore, because Elmwood is not potentially liable for any abuse suffered by Claimant during the effective period of the '08 –'09 Policy, Selective can have no continuing obligation to provide for the defense of Elmwood under that Policy.

WHEREFORE, Plaintiff, Selective Insurance Company of the Southeast, respectfully requests that the Court enter a judgment: (i) declaring that Selective has no duty to defend and/or indemnify Elmwood in the Underlying Action under the '03-'04, '04-'05, and '05-'06 Policies; (ii) declaring that the maximum amount of coverage available under the '06-'07, '07-'08 and '08-'09 Policies, if any, for all monetary amounts Elmwood pays or is obligated to pay in connection with its defense and any resolution of the Underlying Action is $1 million per Policy; (iii) declaring that Selective has no duty to further defend or to indemnify Elmwood in the Underlying Action under the '08-'09 Policy; and (iv) for such other and further relief as the Court deems just and proper.

Dated:  October 30, 2024            Respectfully submitted:

                                          SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST

                                          /s/        *Dennis M. Dolan*
                                          Dennis M. Dolan, One of Its Attorneys

                                          Dennis M. Dolan (6629150)
                                          LITCHFIELD CAVO LLP
                                          303 W. Madison Street, Suite 300
                                          Chicago, IL 60606
                                          Direct:  (312) 781-6641
                                          Email:  Dolan@LitchfieldCavo.com

                                          and

                                          Laura A. Brady (025141993)
                                          William T. Corbett, Jr. (033951996)
                                          Coughlin Midlige & Garland LLP

350 Mount Kemble Avenue
Morristown, NJ 07962
Phone:  (973) 267-0058
Email:  LBrady@cmg.law
Email:  WCorbett@cmg.law